## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**JENELLA LESHAE HARDY,**

      **Petitioner,**

**v.**                                **Case No. 5:22cv153-TKW/MAF**

**RICKY D. DIXON, Secretary,**
**Florida Department of Corrections,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On May 19, 2022, Petitioner Jenella L. Hardy, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On December 5, 2022, Respondent filed an answer, with exhibits. ECF No. 13. Petitioner has not filed a reply, although she was given the opportunity to do so. *See* ECF No. 9.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. For the reasons stated herein, the filings before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Procedural Background

By amended information filed September 19, 2019, in Bay County Circuit Court Case 2019-CF-1604A, the State of Florida charged Petitioner Jenella L. Hardy with two counts:  (1) aggravated battery with a deadly weapon (crowbar), a second degree felony, in violation of sections 784.045(1)(a)1-2, Florida Statutes; and (2) criminal mischief, a third degree felony, in violation of section 806.13(1)(a) and (b)3., Florida Statutes.  Ex. A at 56; *see id*. at 14 (initial information).[1]   The charges arose from an altercation on April 3, 2019, between Hardy and the victim, Barbara Sudano, resulting in injuries to Sudano and damage to Sudano's car.  *See id*. at 56.

Hardy proceeded to a jury trial, with jury selection on September 23, 2019, Ex. A at 129-59, and trial on September 25, 2019, Ex. B.  Hardy did not testify at the trial.  Ex. B at 69-70.  The jury found her guilty as charged on both counts, with specific findings on Count 1 that she had caused great bodily harm and had used a deadly weapon.  *Id*. at 98-99.  The trial judge adjudicated her guilty, *id*. at 100, Ex. A at 172-73, and, on October 29, 2019, sentenced her to twelve (12) years in prison on Count 1, followed by three (3) years' probation, and time served on Count 2, Ex. A at 102-07, 173.

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 13.

Hardy appealed to the First District Court of Appeal (First DCA), assigned case number 1D19-3933.  Ex. A at 113.  Her counsel filed an initial brief pursuant to Anders v. California, 386 U.S. 738 (1967).  Ex. D.  On July 10, 2020, the First DCA affirmed the case per curiam without a written opinion.  Ex. F; Hardy v. State, 300 So. 3d 598 (Fla. 1st DCA 2020) (table).

On February 8, 2021, Hardy filed a pro se Motion for Postconviction Relief, pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. G at 7-15.  By order on February 23, 2021, the state postconviction trial court found the motion insufficient and allowed Hardy sixty (60) days to file a facially sufficient amended motion.  *Id*. at 16.  On March 12, 2021, Hardy filed an amended Rule 3.850 motion.  *Id*. at 17-31.  By order on May 19, 2021, the court found the motion "remains insufficient" and allowed Hardy "one additional opportunity to amend her motion so that it complies with the factual requirements" of Rule 3.850.  *Id*. at 32-33.  On May 28, 2021, Hardy filed a second amended Rule 3.850 motion, raising five claims of ineffective assistance of counsel (IAC).  *Id*. at 34-46.  By order rendered June 16, 2021, the court summarily denied relief.  *Id*. at 47-56 (exclusive of attachments).

Hardy appealed to the First DCA, assigned case number 1D21-2124.  *Id*. at 112; Ex. H.  No briefs were filed.  *See* Ex. H.  On November 19, 2021, the First DCA affirmed the case without a written opinion.  Ex. I; Hardy v.

<u>State</u>, 328 So. 3d 957 (Fla. 1st DCA 2021) (table).  The mandate issued

December 17, 2021.  Ex. I.

On May 19, 2022, Hardy filed the § 2254 petition.  ECF No. 1.  The

petition presents five grounds, all alleging ineffective assistance of counsel

(IAC):

(1) **IAC – Jury Selection**: "Counsel provided ineffective assistance in violation of the 6th and 14th Amendments to the U.S. Constitution when he failed to move to strike juror Virginia Starling."  *Id*. at 4.

(2) **IAC – No Expert Mental Health Witness**: "Counsel was ineffective in violation of the Sixth and Fourteenth Amendment to the United States Constitution when he failed to call an expert mental health witness on behalf of the Petitioner."  *Id*. at 6.

(3) **IAC – Failure to Call Eyewitnesses to Testify**: "Counsel was ineffective, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, for failing to call two eye-witnesses who would have provided testimony, the substance of which would have benefitted the Petitioner."  *Id*. at 7.

(4) **IAC – No Motion for New Trial**:  "Counsel provided ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution when [counsel] failed to file a motion for new trial based on factually insufficient evidence."  *Id*. at 9.

(5) **IAC – Cumulative**:  "The cumulative effect of Counsel's errors rendered his representation of the Petitioner constitutionally ineffective in violation of the Sixth and Fourteenth Amendments to the United States Constitution."  *Id*. at 10.

On December 5, 2022, Respondent filed an answer, with exhibits.  ECF No. 13.  Petitioner has not filed a reply, although she was given the opportunity to do so.  *See* ECF No. 9.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's

review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*.

For IAC claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).   To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).   "And, because the

_Strickland_ standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." _Id._ It is a "doubly deferential judicial review that applies to a _Strickland_ claim evaluated under the § 2254(d)(1) standard." _Id._

## <u>Ground 1</u>:  IAC – Jury Selection

In her first ground, Petitioner Hardy asserts her trial counsel provided ineffective assistance as he did not move to strike a juror, Virginia Starling, who had retired from the office of the Clerk of Court for Bay County, the site of Hardy's trial.  ECF No. 1 at 4.  She asserts that "[i]t is undisputed that Ms. Starling was personally and professionally acquainted with the Judge who presided over the Petitioner's trial as well as the bailiffs, court reporters, State Attorney's office lawyers and other employees who worked daily in the same environment with the Judge, assistant state attorney, bailiffs and other court employee involved in and around the Petitioner's case and trial." _Id_. at 4-5. She further asserts that "[t]his information was brought out during voir dire and the petitioner immediately informed her counsel that she feared the ability of someone so well acquainted and friends with everyone in the legal community of Bay County to be impartial and not have a bias against the defendant due to her friendships with these people," but defense counsel "failed to challenge Ms. Starling for cause or strike her from the jury."  _Id._

Respondent asserts that Hardy "did not fully exhaust the facts supporting this claim" as the factual allegations in her petition "vary from her original claim decided by the state courts." ECF No. 13 at 15. Specifically, Respondent indicates that Hardy's "allegation that she told counsel of her fear that Ms. Starling's position would sway the other juries [sic] and counsel failed to challenge Ms. Starling did not appear in her 3.850 motion." *Id*. at 16. Respondent asserts "[t]his variance from her original facts . . . represents a material expansion of her original claim before this Court that was not raised nor exhausted in the state courts." *Id*. Respondent concludes that, because Hardy cannot return to state court to litigate this aspect of her claim, it is procedurally barred. *Id*. at 16-17. Respondent further concludes that, even if the claim is considered, Hardy has not shown the state courts unreasonably applied Strickland. *Id*. at 17-23.

Assuming Hardy raises in this Court the same claim she raised in the state courts, such claim should be denied. After setting forth the Strickland standard, the state post-conviction trial court denied the claim, making the following findings:

> In Ground One, the Defendant alleges her counsel was ineffective for failing to strike Virginia Starling from the pool of prospective jurors, either for cause or peremptorily. She alleges Ms. Starling was "a retired Clerk of Court in Bay County, and was both personally and professionally acquainted with the Judge, Clerk, Bailiff, and other officers of the Court, presenting a bias in

fact that would prevent her from being an impartial juror." She contends a cursory inquiry as to whether or not Ms. Starling would be able to remain impartial in spite of her personal acquaintance with these officers of the Court was not sufficient, and counsel should instead have voir dired Ms. Starling specifically as to whether or not she had forged or maintained any friendships with the State Attorney's Office during her tenure with the Clerk of Court. She contends that "these individuals worked in the same building, for many years, with Ms. Starling, and she was personally acquainted with them" which would exacerbate "the propensity for her to give more weight to their credibility." She contends she was prejudiced because Ms. Starling was "predisposed to being led by various officers of the Court" and it was "likely that Ms. Starling would exert undue influence on the other jurors to also follow her line of thinking."

Ground One is due to be denied because the Defendant has failed to establish prejudice. To be entitled to relief on a claim that counsel was deficient for not exercising a cause challenge or a peremptory challenge to strike a prospective juror, "the defendant must establish that a juror was actually biased." Troy v. State, 57 So. 3d 828, 837 (Fla. 2011). Under the "actual bias standard," a defendant must "'demonstrate that the juror in question was not impartial – i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record.'" Id. (quoting Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007). "Moreover, to establish actual bias, the record must show 'something more than mere doubt about [the] juror's impartiality.'" Brown v. State, 304 So. 3d 243, 258 (Fla. 2020) (quoting Mosley v. State, 209 So. 3d 1248, 1265 (Fla. 2016)).

The Defendant has failed to establish that Ms. Starling was actually biased against her, could not be fair and impartial, and could not follow the law as instructed. During voir dire, Ms. Starling stated she was "retired from the clerk of court" and she knew the judge, the clerk and the bailiff. She further stated she had not had any real experience with the State Attorney's Office, and she would be fair and impartial. (Jury Sel. Tr. at 5.) There is no record support for the Defendant's assertion that Ms. Starling was "personally and professionally acquainted" with

"other officers of the Court."  She did not indicate that she knew either the Assistant State Attorney or the Defendant's counsel. The Defendant does not allege that the Assistant State Attorney prosecuting her case was employed in that capacity at the same time Ms. Starling was employed with the Clerk of Court which would indicate even a possibility that she knew or even had any tangential contact with the Assistant State Attorney.  The fact that Ms. Starling knew the judge, the clerk and the bailiff in the courtroom based on her prior employment with the Clerk of the Court does not establish actual bias in favor of either the prosecution or the defense.  The Defendant has not established or even sufficiently alleged a reasonable probability that, but for the alleged deficiency, the result of the proceeding would have been different.

Because the Defendant has been given the opportunity to amend, this claim is denied on the merits.  *See* Nelson, 977 So. 2d 710, 711 (Fla. 1st DCA 2008).  *See also* Fla. R. Crim. P. 3.850(f)(2).

Ex. G at 51-52.  On appeal, the First DCA per curiam affirmed the case without a written opinion.  Ex. I.  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Wright v. Sec'y, Dep't of Corr., 278 F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the

federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.").

Specifically, the transcript from jury selection contains statements from Ms. Starling:

> MS. STARLING:  Virginia Starling.  I live in Lynn Haven.  I am retired from the clerk of court.  I am widowed.  My husband's occupation was the navy base.  I have two children.  One is a stay at home mom.  The other works for Teco Gas Company.  I have had prior jury service.  It was a civil suit.  I was part of a civil suit in the past.  I do know the judge, the clerk, and the bailiff.  There he is.  And I have not had any real experience with the State Attorney's Office.  And I will be fair and impartial.

Ex. A at 133.  After all strikes by counsel, the judge asked, "Now, before we do anything further, is this jury acceptable to the State?"  *Id*. at 156.  The prosecutor responded, "Yes, Your Honor."  *Id*.  The judge asked, "Agreeable with the Defense?" and defense counsel answered, "Yes, Your Honor."  *Id*.  The judge then asked, "Is it satisfactory with you Ms. Hardy?" and Petitioner responded, "Yes, ma'am."  *Id*.  Nothing indicates defense counsel or Hardy had any issue with Juror Starling.  *See id*. at 133-56.  Neither side questioned Ms. Starling about her past employment or relationships with anyone in the Clerk's Office, the courthouse, or the State Attorney's Office.  *See id*.

From the record, nothing indicates any actual bias on the part of Juror Starling or that she could not render a fair and impartial verdict. *See, e.g.*,

Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007) ("[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased."); Kopsho v. State, 959 So. 2d 168, 170 (Fla. 2007) (explaining test trial courts use "for determining juror competence is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court" and "[a] juror must be excused for cause if any reasonable doubt exists as to whether the juror possess an impartial state of mind"); Parker v. State, 641 So. 2d 369, 373 (Fla. 1994) ("In evaluating a juror's qualifications, the trial judge should evaluate all of the questions and answers posed to or received from the juror.").  Nothing indicates Juror Starling could not render a verdict solely on the evidence and the instructions given by the judge.  *See, e.g.*, Patton v. Yount, 467 U.S. 1025, 1037 n. 12, 104 S. Ct. 2885 (1984) (explaining "constitutional standard that a juror is impartial only if he can lay aside his opinion and render verdict based on evidence presented in court" is question of federal law and "whether a juror can in fact do that is a determination to which habeas courts owe special deference").

Moreover, contrary to her assertions in her petition that she had concerns regarding Ms. Starling, Hardy affirmatively indicated to the state

trial court judge that the selected jury, which included Ms. Starling, was satisfactory.  Ex. A at 156.  "Solemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 74 (1977).

Based on the foregoing, Petitioner Hardy has not shown the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 2:  IAC – No Expert Mental Health Witness

In her second ground, Petitioner Hardy asserts her trial counsel provided ineffective assistance because "he failed to call an expert mental health witness."  ECF No. 1 at 6.  As Respondent indicates, ECF No. 13 at 23, Hardy raised this claim as the second ground in her second amended Rule 3.850 motion, *see* Ex. G at 39.  The state post-conviction trial court denied the claim, making the following findings:

> In Ground Two, the Defendant alleges her counsel was ineffective for failing to call an expert witness to testify on her behalf.  The Defendant states she was "under the care of Dr. Franco" of Life Management, that Dr. Franco had been "treating her since the release of her previous incarceration," and that Dr. Franco had previously diagnosed her as suffering from bipolar disorder and Schizophrenia.  She contends her counsel should have called Dr. Franco to testify as to her diagnosis, her state of mind at the time of the incident, and her state of mind shortly after the incident when she made incriminating statements to the

officer who responded to the scene.  She argues that presenting evidence of a psychological disorder or impairment would have provided the jury "a different perspective of her" in contrast to the State's portrayal of her as being "cold, calculating and unfeeling." She alleges Dr. Franco was available to testify and would have provided valuable information as to her state of mind.

Ground Two is due to be denied because the Defendant has not sufficiently established or even alleged prejudice.  The Defendant was charged with Aggravated Battery (Deadly Weapon Bodily Harm) contrary to section 784.045(1)(a)1. and 2., Florida Statutes, which provides that a person commits aggravated battery if the person (1) intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement, or (2) uses a deadly weapon in committing battery.  A person commits the offense of battery if the person (1) actually and intentionally touches or strikes another person against the will of the other, or (2) intentionally causes bodily harm to another person.  *See* § 784.03(1), Fla. Stat.  The Defendant was charged with Criminal Mischief ($1,000.00 or More) contrary to section 806.13(1)(a) and (b)3., Florida Statutes, which provides that a person commits the offense of criminal mischief if she "willfully and maliciously injures or damages by any means any real or personal property belonging to another."

Initially, the Defendant does not allege how or why Dr. Franco would know her "state of mind" at either the time of the incident or when she made incriminating statements to an officer shortly after the incident.  The Defendant does not allege that evidence of her diagnosis of either bipolar disorder or Schizophrenia would have resulted in suppression of her statement to the officer.  She does not allege that a diagnosis of either bipolar disorder or Schizophrenia would result in her inability to ever (i) intentionally touch or strike another person against the will of the other person, (ii) intentionally or knowingly cause great bodily harm, permanent disability or permanent disfigurement, or (iii) willfully and maliciously injure or damage property, in order to establish the State could not prove the requisite elements of either offense.  Indeed, the Defendant does

not allege that she was unaware of her actions or unable to form the requisite intent to commit the offenses as a result of either bipolar disorder or Schizophrenia. She asserts only that evidence of her psychological disorder or impairment would have given the jury "a different perspective" of her in contrast to the State's portrayal of her as being "cold, calculating and unfeeling." The State was not required to prove the Defendant was "cold, calculating and unfeeling" in order to prove the elements of either charged offense. The Defendant has not established, or even sufficiently alleged, that there is a reasonable probability that, but for the alleged deficiency, the result of the proceeding would have been different.

Accordingly, the Defendant has not established that she was prejudiced in any way. Because the Defendant has been given the opportunity to amend, this claim is denied on the merits. *See* Nelson, 977 So. 2d at 711. *See also* Fla. R. Crim. P. 3.850(f)(2).

Ex. G at 52-53. On appeal, the First DCA per curiam affirmed the case without a written opinion. Ex. I. This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55. A review of the record supports the state courts' determination. *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

Specifically, as the state postconviction trial court determined, Hardy's allegations do not sufficiently show that she was unaware of her actions or unable to form the intent to commit to the offenses due to her mental health. As Respondent indicates, ECF No. 13 at 27, "Florida does not recognize a diminished capacity defense," Thompson v. State, 88 So. 3d 312, 321 (Fla.

4th DCA 2012).  *See, e.g.*, <u>Evans v. State</u>, 946 So. 2d 1, 11 (Fla. 2006) ("[D]efense counsel is not ineffective for failing to present the defense of diminished capacity because diminished capacity is not a viable defense in Florida.").  In <u>Thompson</u>, the court explained that "[m]any people have a low IQ or suffer from behavioral and mood disorders and are able to function in today's society," and "[t]he fact that one suffers from mental disorders and has a history of behavioral problems or drug abuse does not mean 'that one may engage in violent, dangerous behavior and not be held accountable.'" 88 So. 3d at 321 (quoting <u>James v. State</u>, 489 So. 2d 737, 739 (Fla. 1986)). *See also generally, e.g.,* <u>Chestnut v. State</u>, 538 So. 2d 820, 825 (Fla. 1989) ("It could be said that many, if not most, crimes are committed by persons with mental aberrations.  If such mental deficiencies are sufficient to meet the definition of insanity, these persons should be acquitted on that ground and treated for their disease.  Persons with less serious mental deficiencies should be held accountable for their crimes just as everyone else.  If mitigation is appropriate, it may be accomplished through sentencing, but to adopt such a rule which creates opportunity for such persons to obtain immediate freedom to prey on the public once again is unwise.").

As Respondent also indicates, ECF No. 13 at 27, defense counsel knew of Hardy's mental health because counsel used that information at

sentencing to argue for a downward departure, *see* Ex. A at 164, 168-69. Indeed, Hardy herself testified at the sentencing hearing, relating the events that led to the charges in this case.  *See* Ex. A at 169-72.  Thus, as the state post-conviction court determined, Hardy has not demonstrated prejudice as she did not show, or even allege that, but for the alleged deficiency in not obtaining a mental health expert, the result of the proceeding would have been different.  *See, e.g.*, Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining habeas petitioner is not entitled to evidentiary hearing where claims are merely "'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (quoting Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990))).  *Cf., e.g.*, Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1294 (11th Cir. 2012) (reversing and remanding for evidentiary hearing on IAC claim where, among other things, "Pope has alleged, through his experts' affidavits, that his mental illnesses, both singularly and in combination, impaired all aspects of his cognitive and emotional processes and left him predisposed to act in an irrational manner when confronted with even minimal stressors").

Based on the foregoing, Petitioner Hardy has not shown the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable

determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

### <u>Ground 3</u>:  IAC – Failure to Call Eyewitnesses to Testify

In her third ground, Hardy asserts her trial counsel provided ineffective assistance by "failing to call two eye-witnesses who would have provided testimony, the substance of which would have benefitted the Petitioner." ECF No. 1 at 7.  As Respondent indicates, ECF No. 13 at 29, Hardy raised this claim as the third ground in her second amended Rule 3.850 motion, *see* Ex. G at 40.  The state post-conviction trial court denied the claim, making the following findings:

> In Ground Three, Defendant asserts that counsel was ineffective for failing to call witnesses that could have cast doubt on her guilt.  She alleges she made defense counsel aware of two eyewitnesses to the incident, but defense counsel failed to call either witness to testify at trial.  She states she advised defense counsel that Shakita Duncan and Demetrius Watts were present at the time the Defendant allegedly attacked the victim with a crowbar, both were available and willing to testify, and both would have testified that the Defendant never hit the victim with a crowbar or any other foreign object or weapon.  She argues that if defense counsel had called these two witnesses to testify, there is a reasonable probability the jury would have found the Defendant not guilty of Aggravated Battery which in turn would have "negated the necessity for a 15 year split sentence."

> Ground Three is due to be denied.  The Defendant has not sufficiently established or even alleged prejudice.  The Defendant was charged with Aggravated Battery (Deadly Weapon Bodily Harm) contrary to section 784.045(1)(a)1. and 2., Florida Statutes, which provides that a person commits

aggravated battery if the person (1) intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement, or (2) uses a deadly weapon in committing battery.  A person commits the offense of battery if the person (1) actually and intentionally touches or strikes another person against the will of the other, or (2) intentionally causes bodily harm to another person.  § 784.03(1), Fla. Stat.  The State was not required to prove the Defendant used a crowbar or other deadly weapon in order to obtain a conviction as charged on Count 1.  The victim's testimony that the Defendant waited near the victim's car for 10-15 minutes and again pursued the victim with the crowbar when the victim returned, the victim's testimony regarding her injuries and the Defendant's statements during the attack, and the arresting officer's testimony of the Defendant's spontaneous statement are sufficient for a jury to find the Defendant intentionally or knowingly caused great bodily harm. The jury specifically found that the Defendant caused great bodily harm to the victim.  (Verdict.)  The Defendant does not allege that the testimony of the two proposed witnesses would in any way refute this evidence.  The Defendant has not established or even sufficiently alleged that there is a reasonable probability that, but for the alleged deficiency, the result of the proceeding would have been different.

Because the Defendant has been given the opportunity to amend, this claim is denied on the merits.  *See* Nelson, 977 So. 2d at 711.  *See also* Fla. R. Crim. P. 3.850(f)(2), (4).

Ex. G at 54.  On appeal, the First DCA per curiam affirmed the case without a written opinion.  Ex. I.  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55. A review of the record supports the state courts' determination.  *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, as the state postconviction court explained, for the aggravated battery conviction, the State was not required to prove Hardy used a crowbar or other deadly weapon, because that offense required the State to show Hardy *either* (1) "intentionally or knowingly cause[d] great bodily harm, permanent disability, or permanent disfigurement," *or* (2) "use[d] a deadly weapon" in committing battery. § 784.045(1)(a)1. and 2., Fla. Stat. (2018). The record supports the court's finding that the victim's testimony regarding her injuries and Hardy's statements during the attack, and the arresting officer's testimony about Hardy's spontaneous statement, were sufficient for a jury to find Hardy intentionally or knowingly caused great bodily harm. *See* Ex. B at 28 (trial testimony of Officer J.P. Ferrell that, when he arrested Hardy, "[s]he spontaneously uttered that she would have killed the expletive, she would have killed her"), 39-40 (trial testimony of victim, Barbara Sudano, regarding injuries she suffered in altercation with Hardy and statements Hardy made: "Both arms were broke. They had to go in and put a steel plate in this, with six screws in it. This took months to heal up. But all my ribs on my left side were broke" and during the attack Hardy was telling her, "Bitch, I'm gonna kill you. And she didn't say it one time, she said it many times."). As the state court determined, Hardy does not allege the testimony of the two proposed witnesses would refute this testimony.

Moreover, the trial transcript also reflects that defense counsel did present a witness, Roshannon Demetrius Salmon, who testified that she saw both Sudano and Hardy, evidently just after they had left the house, and Salmon did not see Hardy with a crowbar:

Q  Okay.  Did you see Ms. Hardy?

A  Yes.

Q  Okay.  What was she doing with Ms. Sudano?

A  She, I wouldn't say Ms. Sudano ran, but she, like, walked fast and she was like, you know, somebody please call the police. Ms. Hardy was, she came behind her, well, it was an incident before then at, like, I want to say, I don't know the exact address, but it was like 1117, and they had words down there or whatever.

Q  And you don't know what happened over at the house?

A  I don't know what happened there, no.  But when she came down to 1123, she proceeded after Ms. Sudano.  But I had, like I told you on the phone, I had a warrant, so I was not trying to get involved.  And at that time, I even said to Ms. Hardy, you need to, y'all need to take that back where it, you know, where it started from.

Q  Did you see Ms. Hardy with a crowbar at that time?

A  No, I didn't.

Q  So, you just saw them fighting?

A  Yeah.

Q  And exchanging words?

A  That was, yes, I didn't see her with a crowbar, no.

Q  Did you see a crowbar?

A  No.

Ex. B at 53-54.  In closing, defense counsel argued the State had not proven aggravated battery because Sudano had not suffered great bodily harm and Salmon had testified "she saw Ms. Sudano running down the street and Ms. Hardy following her, there was no crowbar in her arm" whereas "Ms. Sudano, you know, said she was chased with a crowbar."  *Id.* at 83.  Thus, even without the proposed two witnesses, defense counsel did present testimony to support the argument that Hardy did not have a crowbar.  As the state postconviction court determined, Hardy did not establish a reasonable probability that, if defense counsel had called the two proposed witnesses, the result of the proceeding would have been different.

Based on the foregoing, Petitioner Hardy has not demonstrated that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## Ground 4:  IAC – No Motion for New Trial

In her fourth ground, Petitioner Hardy asserts her trial counsel provided ineffective assistance by failing "to file a motion for new trial based on

factually insufficient evidence."  ECF No. 1 at 9.  As Respondent indicates,

ECF No. 13 at 34, Hardy raised this claim as the third ground in her second

amended Rule 3.850 motion, *see* Ex. G at 41.  The state post-conviction trial

court denied the claim, making the following findings:

> In Ground Four, the Defendant asserts counsel was
> ineffective for failing to move for a new trial based on factually
> insufficient evidence.  She argues the crowbar in question was
> never seized by law enforcement and never tested for fingerprint
> or DNA evidence.  She argues that if the victim was truthful in
> her testimony that the Defendant hit her repeatedly over the head
> and face with a crowbar there would have been blood present at
> the scene and valuable DNA evidence on the crowbar, but the
> crowbar was left at the house and never subjected to any type of
> forensic testing.
>
> Ground Four is due to be denied.  The Defendant has failed
> to establish deficient performance by defense counsel or
> prejudice.  The Defendant was charged with Aggravated Battery
> (Deadly Weapon Bodily Harm) contrary to section
> 784.045(1)(a)1. and 2., Florida Statutes, which provides that a
> person commits aggravated battery if the person (1) intentionally
> or knowingly causes great bodily harm, permanent disability, or
> permanent disfigurement, or (2) uses a deadly weapon in
> committing battery.  A person commits the offense of battery if
> the person (1) actually and intentionally touches or strikes
> another person against the will of the other, or (2) intentionally
> causes bodily harm to another person.  § 784.03(1), Fla. Stat.
> The State was not required to prove the Defendant used a
> crowbar or other deadly weapon in order to obtain a conviction
> as charged on Count 1.  The victim's testimony that the
> Defendant waited near the victim's car for 10-15 minutes and
> then renewed her pursuit of the victim, the victim's testimony
> regarding her injuries and the Defendant's statements during the
> incident, and the arresting officer's testimony of the Defendant's
> spontaneous statement provided sufficient evidence for a jury to
> find the Defendant intentionally or knowingly caused great bodily

harm.  The jury specifically found the Defendant caused great bodily harm to the victim.  (Verdict.)

      This claim is also refuted by the record.  The victim did not testify that the Defendant repeatedly hit her on the head or face with the crowbar.  Instead, the victim testified that after she fell to the ground the Defendant kicked her and hit her with a closed fist.  (Tr. at 45-46.)

      The Defendant has not established or even sufficiently alleged that there is a reasonable probability that, but for the alleged deficiency, the result of the proceeding would have been different.  Because the Defendant has been given the opportunity to amend, this claim is denied on the merits.  *See* <u>Nelson</u>, 977 So. 2d at 711.  *See also* Fla. R. Crim. P. 3.850(f)(2), (4).

Ex. G at 54-55.  On appeal, the First DCA per curiam affirmed the case without a written opinion.  Ex. I.  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* <u>Richter</u>, 562 U.S. at 99; <u>Wright</u>, 278 F.3d at 1254-55.  A review of the record supports the state courts' determination.  *See* <u>Wilson</u>, -- U.S. --, 138 S. Ct. at 1192.

As explained in the analysis of Ground 3, *supra*, and as the state postconviction court explained, for the aggravated battery conviction, the State was not required to prove Hardy used a crowbar, because that offense required the State to show Hardy *either* (1) "intentionally or knowingly cause[d] great bodily harm, permanent disability, or permanent disfigurement," *or* (2) "use[d] a deadly weapon" in committing battery.

§ 784.045(1)(a)1. and 2., Fla. Stat. (2018).  The record supports the court's finding that Sudano's testimony regarding her injuries and Hardy's statements during the attack, and the arresting officer's testimony about Hardy's spontaneous statement, were sufficient for a jury to find Hardy intentionally or knowingly caused great bodily harm.  *See* Ex. B at 28 (trial testimony of Officer J.P. Ferrell), 39-40 (trial testimony of victim, Barbara Sudano).   Nothing indicates a reasonable probability that, had defense counsel moved for a new trial on the basis urged by Hardy, the trial court would have granted the motion.  *See, e.g.*, Johnson v. State, 247 So. 3d 689, 697 (Fla. 1st DCA 2018) ("Given the evidence discussed above, there is no likelihood that a motion for a new trial would have been granted, because the verdict was not contrary to the weight of the evidence . . . .").

In addition, the record supports the state postconviction trial court's determination that Hardy's claim is refuted by the record as Sudano did not testify that Hardy repeatedly hit her on the head or face with the crowbar.  In particular, the trial transcript reflects that Sudano watched Hardy chase Hardy's husband with the crowbar, and Sudano then "made a run for it," though she did turn around and saw Hardy beating her car with the crowbar.  Ex. B at 37-38.  Sudano then ran down the block, but she "came back" after about ten to fifteen minutes, because she "figured [Hardy] might have gone

home" and she could then get her car, which had her phone inside.  *Id*. at 38.  Sudano testified she "made it back to where the road leads into to [sic] where my vehicle was, that's when I saw her again."  *Id*. at 39.  Sudano testified:

Q  Okay.  And that's Ms. Hardy?

A  Yes.

Q  What happens when she confronts you for the second time?

A  She starts swinging the crowbar at me.

Q  And does she hit you with it?

A  Yes.

Q  Where does she hit you with it?

A  Everywhere she can.  Both arms were broke.  They had to go in and put a steel plate in this, with six screws in it.  This took months to heal up.  But all my ribs on my left side were broke –

Q  Hold on.  Did you fall to the ground?

A  Oh yeah.

Q  What happened when you were on the ground?

A  I was pushed on the ground.  I fell on the ground.  I was helpless.  I mean, nobody called for help or nothing.  They were, honestly, antagonizing her, you know.

Q  Did you eventually, were you able to get up off the ground?

A  Yeah, I tried, yes, but she continued to kick me when I was on the ground and she was wreaking havoc on me.

Ex. B at 39-40.  On cross, Sudano testified further regarding the attack:

Q  Now, I want to talk to you about the fight, okay.  You said that she chased you in the yard and she chased you up and down the block?

A  Yes.

Q  And she struck you with a crowbar all over?

A  She struck me with the crowbar, I know, on my arm and on this arm.  And when I went to the ground, she was kicking me and using her fists, so I don't know at what point she dropped the crowbar or somebody got it from her, I don't know, but she broke my arm with a crowbar.

Q  Okay.  And you told the police officer that she struck you in the, did you tell the office that she had also struck you in the head with a brick?

A  I'm sure I did.

Q  And that she had struck you with a crowbar on the right arm?

A  Yeah, she had picked up like a little concrete block that was broken from a cinder block, and yeah, she was swinging it at me, absolutely.

Q  Okay.  And that she had struck you in the crowbar (sic) in the right arm and the face?

A  She struck me with her hand, her fists in my face because I remember it distinctly.  She almost knocked my front tooth out.

*Id*. at 45-46.  Thus, the record supports the state postconviction court's finding that Sudano testified, after she fell to the ground Hardy "kicked her and hit her with a closed fist," not a crowbar.  Ex. G at 55.

In addition, Officer Ferrell testified that, at the scene, he observed "a white Ford Focus [Sudano's car] . . . [with] a back windshield smashed out, two flat tires on the driver's side and the side window smashed out."  Ex. B at 21.  He took photographs, which were admitted into evidence.  *Id*. at 22-24.  He identified the type of object that may have caused the damage and "observed a crowbar" in an open room of the house.  *Id*. at 25.  His photographs showed the damage to the car, State's Exhibits A-1 through A-7 and A-10 through A-13, as well as the crowbar, State's Exhibit A-15.  *Id*. at 22-26.  On cross, Officer Ferrell testified regarding statements Sudano made to him and his observations of her head:  "She said she was struck on the arm, the head and the face.  I did not observe any marks on the head that would indicate a blow from a crowbar."  *Id*. at 29.

Based on the foregoing, Petitioner Hardy has not demonstrated that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## Ground 5:  IAC – Cumulative Error

In her fifth ground, Petitioner Hardy asserts that "[t]he cumulative effect of Counsel's errors rendered his representation of the Petitioner

constitutionally ineffective."  ECF No. 1 at 10.  Hardy raised this claim in the

fifth ground of her second amended Rule 3.850 motion.  *See* Ex. G at 42.

The state postconviction trial court denied the claim, making the following

findings:

> In Ground Five, the Defendant asserts the cumulative
> effect of defense counsel's efforts establish deficient
> performance and prejudice.
>
> Ground Five is due to be denied.  Because the remaining
> claims raised by the Defendant have been denied, there can be
> no cumulative error.  *See* Bradley v. State, 33 So. 3d 664, 684
> (Fla. 2010); Parker v. State, 904 So. 2d 370, 380 (Fla. 2005)
> ("Where the individual claims of error alleged are either
> procedurally barred or without merit, the claim of cumulative error
> also necessarily fails.").  Accordingly, Ground Five is denied.

Ex. G at 55-56.

On appeal, the First DCA per curiam affirmed the case without a written

opinion.  Ex. I.  This adjudication on the merits is entitled to AEDPA

deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth

in the decision.  *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55.

Indeed, the Eleventh Circuit has rejected an argument of cumulative

error in the context of IAC claims.  Forrest v. Fla. Dep't of Corr., 342 F. App'x

560, 565 (11th Cir. 2009) (explaining that "[t]he Supreme Court has not

directly addressed the applicability of the cumulative error doctrine in the

context of an ineffective assistance of counsel claim" and "the Supreme

Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt'" (quoting <u>United States v. Cronic</u>, 466 U.S. 648, 659 n.26 (1984))).   Moreover, as the state postconviction court concluded, because each individual ground fails, this ground likewise fails and should be denied.  *See, e.g.*, <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative trial court error as "none of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate"); *accord, e.g.*, <u>United States v. Chalker</u>, 966 F.3d 1177, 1193-94 (11th Cir. 2020).

Based on the foregoing, Petitioner Hardy has not demonstrated that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## <u>Conclusion</u>

Petitioner Hardy is not entitled to federal habeas relief.  It is respectfully **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.

## **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.  The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 16, 2023.

**S/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.**